UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| VERNA BLUE THUNDER,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | 3:18-CV-03009-RAL<br><br><br>OPINION AND ORDER<br>GRANTING GOVERNMENT'S MOTION<br>TO DISMISS AND DENYING PLAINTIFF'S<br>§ 2255 MOTION |

Verna Blue Thunder filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. CIV Doc. 1.[1] Blue Thunder's § 2255 motion stated three claims of ineffective assistance of counsel: failing to file an appeal from her sentencing, failing to request a mental health evaluation, and failing to communicate with her. CIV Doc. 1. Blue Thunder raised a fourth ground alleging that she pleaded guilty without fully knowing and understanding the consequences of her plea. CIV Doc. 1. Because Blue Thunder raised ineffective assistance of counsel claims, this Court entered an order directing former defense counsel to respond, CIV Doc. 6, and Blue Thunder signed an Attorney-Client Privilege Waiver, CIV Doc. 7, to facilitate a response from her attorney. Blue Thunder's criminal defense attorney filed an affidavit, CIV Doc. 9, after which the Government filed a Motion to Dismiss and supporting memorandum, CIV Docs. 13, 14. Blue Thunder did not respond to the Motion to Dismiss within the time allotted, so this Court entered

---

[1] Citations to documents in the CM/ECF system filed in this § 2255 case will be "CIV Doc." followed by the document number from 18-CV-03009.

1

an order directing her to respond. CIV Doc. 15. Blue Thunder then responded opposing the dismissal of her § 2255 motion. CIV Doc. 16. For the reasons explained, the Government's Motion to Dismiss is granted and Blue Thunder's Motion for § 2255 relief is denied.

I.  **Facts from Criminal Case**

Blue Thunder and two of her daughters were indicted on August 16, 2016, in a three-count indictment charging assault resulting in serious bodily injury and child abuse. CR Doc. 1.[2] Jana M. Miner was the defense attorney appointed to represent Blue Thunder during the criminal case. Miner has been employed with the Federal Public Defender's Office of North and South Dakota since January of 2000, and holds the position as the Senior Litigator of that office. CIV Doc. 9.

Blue Thunder reached an agreement to plead guilty shortly prior to her scheduled jury trial. The Plea Agreement called for Blue Thunder to plead guilty to Counts 2 and 3 of the Indictment. CR Doc. 104 at ¶ C. Blue Thunder also signed a Statement of Factual Basis, the redacted content of which is the following:

> On or about between the 29th day of October, 2014, and the 25th day of June, 2016, near Mission, in Todd County, in Indian country, in the District of South Dakota, Verna Blue Thunder, an Indian, did abuse, expose, torture, torment, and cruelly punish [NAME REDACTED 1], a child who had not attained the age of seven, in violation of 18 U.S.C. §§ 1153 and SDCL 26-10-1.
> On or about between the 29th day of October, 2014, and the 25th day of June, 2016, near Mission, in Todd County, in Indian country, in the District of South Dakota, Verna Blue Thunder, an Indian did abuse, expose, torture, torment, and cruelly punish [NAME REDACTED 2], a child who had not attained the age of seven, in violation of 18 U.S.C. §§ 1153 and SDCL 26-10-1.
> On October 29, 2014, the Defendant took full physical custody of [NAME REDACTED 1] (hereinafter "the boy") and his sister, [NAME REDACTED 2] (hereinafter "the girl"). The Defendant lived with the boy and the girl (collectively "the children"), along with several other family members in her home in the New Ring Thunder Community, Mission, South Dakota.
> The boy had suffered physical abuse at the hands of his biological father prior to coming to live with the Defendant. The boy needed specialized medical

---

[2] Citations to documents in the CM/ECF system filed in Blue Thunder's criminal case are cited as "CR Doc." followed by the document number from 16-CR-30114.

care due to his abuse; however, he appeared happy and healthy when he was transported to the Defendant's home by social workers.

While in the Defendant's care, the children suffered physical abuse. The Defendant hit the children with an open hand on the buttocks, lower back, and head. The Defendant, on more than one occasion, grabbed the boy by his arms and drug him or threw him. The Defendant would lock the children in a closet in the home for punishment and would withhold food from the children.

In August 2015, the South Dakota Department of Social Services (DSS) received a report that the Defendant might be abusing or neglecting the children. Subsequent investigative efforts were unsuccessful and resulted in an unsubstantiated case, due in part to the fact that the Defendant refused to cooperate with DSS employees.

In April 2016, DSS received a report that the girl had told a teacher at her school that the Defendant hit her on the head. The teacher observed bruises on the girl's shoulder that looked like finger marks, as well as a scrape and three hard knots on the girl's head.

On May 10, 2016, DSS received a report that the girl had been locked in closet for digging for food at her mother's home. When contacted by DSS, the Defendant reported that the children had gone to Texas to live with a relative and would not provide additional information.

Between May 10, 2016, and June 21, 2016, DSS made repeated unsuccessful attempts to make contact with the Defendant at her house and gather information regarding the children's well-being.

In June 2016, Ashley Sutch, the Defendant's niece, became aware that the Defendant was looking for someone to take custody of the children because she could not take care of them. Ashley resides in Spokane, Washington, and contacted the Defendant to see how she could help. She subsequently made arrangements to travel to Mission to pick up the children.

On the evening of June 25, 2016, Ashley and her boyfriend, Tyler Roberts, arrived in Mission and picked up the children from the Defendant. Ashley observed that both the boy and the girl looked very sick. The boy appeared to have a distended stomach and an enlarged head. He also had scrapes on his knees, arms and legs, bruising on his back and arms, a swollen elbow, and bumps on his head. The girl had a large knot on her forehead, scrapes on her back and face, and bruising on her arms and legs. The Defendant told Ashley that the boy was 2 years old.

Ashley and Tyler thereafter left Mission and began driving the children back to Spokane. The children immediately started talking about how hungry they were. During the trip, the children ate so much and so fast that they became sick. Ashley tried to ration their food to keep them from getting sick. The group arrived in Spokane on the evening of June 26, 2016.

On June 27, 2016, Ashley took the children to Sacred Heart Medical Center in Spokane. At the time of his admission, the boy was not potty-trained and was unable to walk. He was diagnosed with healing fractures to both of his arms and to two of his ribs, for which he had received no medical care. The child abuse specialist who evaluated the boy's case noted that the arm fractures were consistent

with grabbing and/or pulling with extreme force by an adult caregiver. She noted that the rib fractures were consistent with high-force squeezing or impact injury.

The boy was found to be chronically starved to the point of emaciation. The specialist noted that the boy's condition was consistent with physiological dwarfism, caused by a combination of extreme starvation and emotional deprivation. She also noted that the bruising on his face and torso were consistent with finger marks and were not consistent with accidental injury. She further noted that the extent and severity of the boy's starvation and inflicted injuries rose to the level of torture and that, given his level of malnutrition, the boy could have easily died.

Finally, the specialist noted that the boy suffered subdural hematomas and retinal hemorrhages as a result of physical abuse when he was as an infant, which left him with some developmental delays. She noted that the chronic malnutrition may well have further impacted his development, and that it appeared he had never been provided medical care to address his medical condition or delays. The boy weighed 20 lbs., 9.6 oz. at the time of his admission, which was placed him in less than the 0th percentile for a child his age. At the time of his discharge from Sacred Heart Medical Center on July 5, 2016, the boy weighed 25 lbs., 12.7 oz.

The girl was also evaluated for physical abuse and neglect. She was noted to be very thin, weighing 35 lbs., 14.4 oz., which placed her in the 26th percentile for a child her age. She was diagnosed with malnutrition to the point of starvation. A physical examination revealed multiple scabbed abrasions to the girl's face and a bruised right ear. The girl reported she fell down the stairs, but the specialist opined that the abrasions were more extensive than would be expected from a fall. She also noted that the bruising was consistent with a blow to the side of the head or an extremely hard punch.

The girl was also observed to be extremely protective of the boy, and the specialist noted that if the girl was given food, she would sniff it and then hand it to the boy. The girl was also noted to be hypervigilant and protective of the boy, indicating to the specialist that the girl had likely been the main caregiver for the boy. At the time of her discharge from Sacred Heart Medical Center on July 5, 2016, the girl weighed 37 lbs., 14.7 oz.

On July 11, 2016, law enforcement executed a search warrant at the Defendant's home. They observed a rope hanging by the refrigerator, which was used to tie the refrigerator shut. They also observed a closet that contained indications of human waste, as well as evidence that the closet door had been tied shut with a rope.

Also on July 11, 2016, the Defendant was interviewed by Special Agent Alicia Rowland, Federal Bureau of Investigation, at the Rosebud Adult Correctional Facility. The Defendant was advised of her *Miranda* rights, orally and in writing, voluntarily waived her rights, and agreed to answer questions. The Defendant admitted she had broken the boy's arms by picking him up really quickly and dragging him. She also admitted to hitting the children, and reported they only ate twice a day.

> The children suffered physical maltreatment at the hands of the Defendant, and they were exposed to needless risk of starvation and death due to the Defendant withholding food from them.
>
> The Defendant's treatment of the children, including her actions of locking the children in the closet and withholding food from them amounted to torment, as such treatment caused severe and unusually persistent or recurrent distress of body or mind.
>
> The Defendant's actions of injuring the children and failing to seek medical care for them amounted to torture and cruel punishment, as such actions caused intense suffering and were done with reckless indifference to pain.
>
> Between October 29, 2014, and June 25, 2016, the children lived in the Defendant's home, and the Defendant was the primary care provider for the children. There were other adults living in the home, but the Defendant was responsible for the children and is responsible for the injuries and harm to the children.
>
> The Defendant is a maternal aunt of the boy and the girl. As of June 25, 2016, the boy was nearly four years old with a date of birth of July 2012. The girl was five years old, with a date of birth of June 2011.
>
> The Defendant had no excuse or legal justification for abusing the boy and the girl, and she did so intentionally and voluntarily. She was able to appreciate the nature and wrongfulness of her actions at the time of the offense, and she could have avoided abusing the children if she had wanted to.
>
> The Defendant is an "Indian" under the provisions of 18 U.S.C. § 1153 in that she is an enrolled member of the Rosebud Sioux Tribe, enrollment number 345U020345 and 4/4 degree of Indian blood. The offense occurred in the New Ring Thunder Community, near Mission, in Todd County, South Dakota, which is within the exterior boundaries of the Rosebud Sioux Indian Reservation, a federally recognized tribe. This location is "Indian country" within the provisions of 18 U.S.C. §§ 1151 and 1153.

CR Doc. 106.

Because of the egregious nature of the child abuse perpetrated on the two child victims, Blue Thunder was looking at potentially a very long prison sentence. In the Plea Agreement, the parties included a joint recommendation regarding sentence as follows:

> The Defendant and the United States understand and agree that the Court will determine the applicable Guideline range after reviewing the presentence report and considering any evidence or arguments submitted at the sentencing hearing. This is a benefit of the bargain plea agreement. The United States agrees that it will recommend that the Court impose a sentence of twelve (12) years imprisonment. The Defendant agrees that she will recommend a custody sentence of not less than seven (7) years imprisonment. Under the terms of this agreement, the Defendant shall not argue for a sentence of less than seven (7) years and

> specifically agrees that her prison sentence should be at least seven (7) years in length.
>
> The parties jointly agree that in order to achieve a sentence of between seven (7) and twelve (12) years, the parties will jointly request an upward departure or variance, or a downward departure or variance, depending on what the Guidelines recommend, for purposes of reaching a prison sentence within the seven (7)- to twelve (12)-year range. This section of the plea agreement will serve as a motion for an upward departure/variance or downward departure/variance, whichever one is necessary to give effect to the agreement. The Government may present evidence that Defendant's case is exceptional as she is pleading guilty to particular charges, and as a benefit of the bargain, the Government is dismissing other more serious charges, some of which could be punishable by a mandatory minimum of ten (10) years up to life imprisonment.
>
> The Defendant understands that any recommendation made by her or the United States is not binding on the Court. The Defendant further understands that she may not withdraw her plea of guilty if the Court rejects any recommendation.

CR Doc. 104 at ¶ G. The Plea Agreement also contained a waiver of defenses and appeal rights as follows:

> The Defendant hereby waives all defenses and her right to appeal any non-jurisdictional issues. The parties agree the Defendant may not appeal a sentence which includes up to twelve (12) years in prison.

CR Doc. 104 at ¶ P. Blue Thunder signed the Factual Basis Statement, the Redacted Factual Basis Statement, and the Plea Agreement. CR Docs. 104, 105, 106.

This Court held a change of plea hearing on August 14, 2017. CR Docs. 109, 160. This Court had Blue Thunder placed under oath at the beginning of the change of plea hearing and assured that she understood the necessity and the legal obligation to testify truthfully. CR Doc. 160 at 2–3. This Court then asked a series of questions to assure that Blue Thunder was competent to go forward with the proposed change of plea. CR Doc. 160 at 3–6. During the exchange this Court asked, among other things, the following:

> THE COURT: Have you had enough time to talk with Ms. Miner about your case and about what you should do here?
>
> [BLUE THUNDER]: Yes.

6

> THE COURT: Are you satisfied with the counsel, advice, and representation provided to you by Ms. Miner?
>
> [BLUE THUNDER]: Yes.

CR Doc. 160 at 5.

The Court then advised Blue Thunder that the maximum penalty she faced on the two counts of child abuse to which she was pleading guilty was fifteen years in prison on each offense. CR Doc. 160 at 7–9. Later during the change of plea hearing, the Court asked directly about the waiver of appeal language in the Plea Agreement as follows:

> THE COURT: Do you realize that your plea agreement contains language standard in this District under Paragraph P whereby you are waiving all defenses and any right to appeal any non-jurisdictional issues; do you understand that?
>
> [BLUE THUNDER]: Yes.
>
> THE COURT: Do you also understand that you are waiving your right to appeal from any sentence, which includes any sentence up to 12 – up to and including 12 years in prison; do you understand that?
>
> [BLUE THUNDER]: Yes.

CR Doc. 160 at 14.

Blue Thunder also assured the Court that she had signed the Plea Agreement, had carefully read and understood the Plea Agreement, had gone over it with her attorney before signing it, and understood that by signing the Plea Agreement she was agreeing with its terms. CR Doc. 160 at 15. The Court also asked her about the Factual Basis Statement, confirming that she had in fact signed the Factual Basis Statement. CR Doc. 160 at 16. The Court then asked:

> THE COURT: Did you carefully read and understand the Factual Basis Statement and go over it with Ms. Miner before signing it?
>
> [BLUE THUNDER]: Yes.
>
> THE COURT: Is the content of the Factual Basis Statement completely accurate?

[BLUE THUNDER]: Yes.

CR Doc. 160 at 16–17. The Court asked a second time about Blue Thunder's communication and satisfaction with her attorney Jana Miner as follows:

> THE COURT: Have you had enough time to talk with Ms. Miner about your case and about what you should do?
>
> [BLUE THUNDER]: Yes.
>
> THE COURT: Do you remain satisfied with her work for you?
>
> [BLUE THUNDER]: Yes.

CR Doc. 160 at 17. Blue Thunder then proceeded to plead guilty to both counts of child abuse. CR Doc. 160 at 18–19.

On November 27, 2017, this Court held a sentencing hearing at which it heard additional testimony. CR Docs. 148, 156, 157. This Court sentenced Blue Thunder to 90 months of custody to run concurrently on the two counts of conviction, and with three years of supervised release concurrently to follow. CR Docs. 148, 156, 157. On November 28, 2017, the Court signed the Judgment in a Criminal Case to formalize the sentence. CR Doc. 150. Blue Thunder did not appeal from the sentence.

## II. Discussion of Blue Thunder's Claims

Blue Thunder, on June 27, 2018, filed her motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. Under 28 U.S.C. § 2255, a prisoner in federal custody is subject to a one-year statute of limitations in applying for relief. 28 U.S.C. § 2255(f). Blue Thunder's filing was within the one-year statute of limitations and thus is timely.

Three of the four grounds that Blue Thunder raises assert ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel in criminal prosecutions. U.S. Const. amend. VI; see also Gideon v. Wainwright, 372

U.S. 335, 339 (1963); Johnson v. Zerbst, 304 U.S. 458, 459 (1938); Powell v. Alabama, 287 U.S. 45, 63 (1932). A defendant who claims to have been deprived of effective assistance of counsel must show: (1) that his lawyer's representation fell below an objective standard of reasonableness; and (2) that the lawyer's deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984); Nupdal v. United States, 666 F.3d 1074, 1075 (8th Cir. 2012) (citing Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000)). For the first requirement of the Strickland test, "the court must apply an objective standard and 'determine whether, in light of all of the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance,' Strickland, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions." Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995). To establish prejudice to satisfy the second prong of the Strickland test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Because hindsight analysis is problematic, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005) (quoting Strickland, 466 U.S. at 689); Hunter v. Bowersox, 172 F.3d 1016, 1024 (8th Cir. 1999). Decisions involving trial strategy are therefore "virtually unchallengeable." Link v. Luebbers, 469 F.3d 1197, 1204 (8th Cir. 2006). "The Sixth Amendment right to counsel functions to ensure that defendants receive a fair trial, not a perfect one." Willis v. United States, 87 F.3d 1004, 1008 (8th Cir. 1996).

Blue Thunder, having pleaded guilty, further must show "a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." United States v. Storey, 990 F.2d 1094, 1097 (8th Cir. 1993) (citation omitted); see also Matthews

v. United States, 114 F.3d 112, 114 (8th Cir. 1997). A petitioner like Blue Thunder "is bound by [her] plea and resulting conviction unless [she] can show [her] attorney's ineffective assistance rendered [her] plea involuntary." United States v. Davis, 230 F.3d 1364, 1364 (8th Cir. 2000) (per curiam). Merely a "bare assertion that [she] would not have plead guilty is insufficient to allow for an intelligent assessment of the likelihood that [Blue Thunder] would have plead guilty and is far too speculative to warrant § 2255 relief." United States vs. Frausto, 754 F.3d 640, 644 (8th Cir. 2014). This Court need not conduct a hearing on a § 2255 motion when the movant's "allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact." Winters v. United States, 716 F.3d 1098, 1103 (8th Cir. 2013) (citation omitted).

Blue Thunder's first ground in her § 2255 motion alleges ineffective assistance of counsel for failing to file an appeal. Blue Thunder's request for relief on this ground may be denied for two obvious reasons. First, her Plea Agreement contained a clear waiver of appeal rights stating in part "the parties agree the Defendant may not appeal a sentence which includes up to twelve (12) years in prison." CR Doc. 104 at ¶ P. Blue Thunder acknowledged under oath during her change of plea hearing that she understood this provision waiving any right to appeal the length of the sentence if the sentence were under twelve years. CR Doc. 160 at 14. Blue Thunder's sentence was ultimately 90 months in length—that is, eight-and-a-half years in length. Therefore, Blue Thunder had waived her right to appeal the length of the sentence. Second, Blue Thunder plainly was made aware of her fourteen days to appeal and her right to appeal in forma pauperis if she should so choose. The Court had advised her of this right at the close of the sentencing hearing. CR Doc. 156 at 54–55. Moreover, her attorney sent a letter to her the day after the Judgment was filed advising her of three things:

10

1) we had discussed filing an appeal and that she did not indicate that she wanted to appeal, 2) if she wanted to file a notice of appeal, she needed to contact me no later than December 12, 2017, and 3) I was keeping her file open due to pending restitution issues.

CIV Doc. 9 at 2. Blue Thunder never told Miner that she wanted to appeal her sentence. CIV Doc. 9 at 3.

Blue Thunder's second ground alleged in the § 2255 motion is that Miner provided ineffective assistance of counsel in failing to request Blue Thunder undergo a mental health examination. Neither in her § 2255 motion nor in her response to the Motion to Dismiss does Blue Thunder elaborate on the basis for such a claim of ineffective assistance. Miner in her affidavit affirmed that Blue Thunder demonstrated an understanding of the charges and assisted in the defense. Miner then addressed the topic as follows:

> I explored no mental health, competency, or insanity defense. There was no basis for a mental status defense. The children, D.B.T. and J.B.T., were in her custody for approximately 18 months. Other children of similar age were also in her custody, primarily M-D.B.T. There was a yawning gap in the treatment of M-D, age 7, by Petitioner compared to the treatment of the victims. The investigation by the FPD office demonstrated that M-D was showered with attention, gifts, and preferential treatment by Petitioner.
> I requested no assessment of Petitioner for Post Traumatic Stress Disorder, although in the sentencing memorandum, I referenced its probably existence based on the abusive relationships in her past. I did not view it as a potential trial defense given the long-standing neglect of the victims, nor did I find research and literature to suggest PTSD was a viable trial defense. A post-plea mental examination may have provided more support for the sentencing argument. I note, however, that the Court sentenced near the low end of the guideline range despite stating that the "facts appropriately invoke outrage." The Court also said that children are sacred in the Lakota tradition and that the "terrible facts" demonstrated Petitioner's "cruelty" and "day-by-day callousness" to the children. Further, the Court referenced Petitioner's "extreme conduct" toward the children. Had there not been demonstrated ability by the Petitioner to adequately care for other children in the same age range, I would have considered a mental health trial defense.

11

CIV Doc. 9 at 4–5. Blue Thunder offers no contrary explanation and did not contest the information provided by Miner. Nothing suggests that Miner's decision to not seek a mental health examination for Blue Thunder was deficient or somehow prejudiced Blue Thunder.

Ground three in Blue Thunder's § 2255 motion alleges that Miner provided ineffective assistance of counsel in failing to communicate with her. Blue Thunder's testimony under oath during her change of plea hearing belies this allegation. Blue Thunder twice during the change of plea hearing acknowledged that she had time to talk with Miner about her case and what she should do and that she was satisfied with the counsel, advise, and representation provided to her by Miner. CR Doc. 160 at 5, 17. Miner in her affidavit detailed her extensive work on the case and communication with Blue Thunder. CIV Doc. 9 at 5.

Blue Thunder's fourth and final claim in her § 2255 motion is that she pleaded guilty without fully knowing and understanding the consequences of her plea. Blue Thunder's claim of not fully knowing and understanding the consequences of her plea is contradicted by her testimony under oath during the change of plea hearing. This Court, after placing Blue Thunder under oath, asked her about her ability to read, write, and understand the English language, and she affirmed that she could do so well. CR Doc. 160 at 4. Blue Thunder committed to letting the Court know if it asked a question that she did not understand or used a word that she did not recognize. CR Doc. 160 at 4. Blue Thunder affirmed that she knew what she was charged with and had plenty of time to talk with Miner about her case and what she should do. CR Doc. 160 at 4–5. After finding Blue Thunder to be competent, this Court read to her the charges to which she was proposing to plead guilty. CR Doc. 160 at 6–8. This Court explained all of the penalties that Blue Thunder faced for being convicted of those offenses. CR Doc. 160 at 6–10. This Court made clear that Blue Thunder did not have to plead guilty and could stick with a plea of not guilty and get a jury

trial. CR Doc. 160 at 10. This Court then explained to Blue Thunder her jury trial rights at length. CR Doc. 160 at 10–12. This Court explained to Blue Thunder the sentencing process. CR Doc. 160 at 12–14. This Court went over the Plea Agreement, Supplement to Plea Agreement, and Factual Basis Statement with Blue Thunder. CR Doc. 160 at 12–17. Blue Thunder throughout the sentencing hearing expressed an understanding of what she was doing, knew that she was giving up her jury trial rights, and knew that she was facing a joint recommendation of between seven and twelve years, from which she would not be able to appeal. CR Doc. 160. There is utterly nothing in the record to hint at, let alone support, a contention that Blue Thunder did not know and understand the consequences of her plea.

## III. Conclusion and Order

For the reasons explained above, it is hereby

ORDERED that Blue Thunder's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, CIV Doc. 1, is denied. It is further

ORDERED that the Government's Motion to Dismiss Blue Thunder's § 2255 Motion, CIV Doc. 13, is granted. It is finally

ORDERED that a certificate of appealability will not issue on the claims raised in the § 2255 motion.

DATED this 25th day of January, 2019.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE